UNITED STATES of America,
Plaintiff-Appellee,

v.

Louis Charles JEFFERSON,
Defendant-Appellant.

No. 80–5176.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 15, 1980.

Decided June 11, 1981.

Alvin L. Keel, Pontiac, Mich., for defendant-appellant.

James K. Robinson, U. S. Atty., Victoria Toensing, Martha Ellen Dennis, Detroit, Mich., for plaintiff-appellee.

Before BOYCE F. MARTIN, Jr. and JONES, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Louis Charles Jefferson appeals from his conviction for possession with intent to distribute heroin and bond jumping. We reverse his conviction for possession of heroin and affirm his conviction for bond jumping.

### I.

On September 4, 1975, Drug Enforcement Agency (DEA) Agent Paul Markonni was on duty at the Detroit Metropolitan Airport. He received a tip from another DEA agent that a black male had flown from Detroit to Los Angeles that very day, and that the courier would return to Detroit the next day with a kilogram of heroin. The informant was considered reliable by the agents, but his information was extremely limited. The informant did not see the courier and did not have any specific information about the courier's height, weight, size, skin color, or clothing. The informant only knew that the courier was a black male and that he was traveling to Los Angeles and returning the next day with heroin.

On September 5, 1975, Markonni and another agent at the Detroit Airport met every flight which originated in Los Angeles. Jefferson arrived on one of the flights, and Markonni thought that he had seen Jefferson on a flight departing for Los Angeles the day before. In fact, Jefferson was in Los Angeles on September 3, 1975, and could not have been on a flight from Detroit to Los Angeles on September 4, 1975.

Markonni followed Jefferson after he deplaned. Although Markonni thought that Jefferson walked faster than "normal," he did not observe any signs of unusual nervousness.

Jefferson arrived in the baggage claim area before any of the luggage from his flight arrived. He walked outside the terminal, looked up and down the curb, and reentered the baggage claim area. Then he made a telephone call from a phone booth. After speaking on the phone for several minutes, Jefferson walked back to the baggage claim area; he stood by the conveyor belt for several minutes but he did not pick up his luggage. Then he went to the bathroom.

When Jefferson returned to the baggage area he stood around for six or seven minutes, until most of the people claiming luggage had left. While he waited he appeared to be observing the other people in the baggage claim area.

Jefferson did not attempt to pick up his luggage until a woman arrived at the airport. When she arrived, Jefferson got his luggage and walked the full length of the claims area to the terminal door. He met the woman at the door. Markonni stopped Jefferson and the woman as they left the terminal, identified himself, and asked them to accompany him to the baggage claim office. Markonni thought they looked nervous after he identified himself, but they went to the office.

In the office, Markonni told Jefferson that he believed Jefferson was carrying drugs. He advised Jefferson of his right to refuse to permit a search of his luggage, but said that he would detain Jefferson

while he attempted to get a search warrant if Jefferson refused to permit a search. Jefferson unlocked the suitcase and told Markonni to "go ahead." Markonni found the heroin concealed in the pocket of a pair of trousers in the suitcase.

Jefferson was indicted in 1975. He failed to appear at a pretrial hearing and a bench warrant issued for his arrest. He was arrested in November 1979. After his arrest, a superseding indictment charged Jefferson with possession with intent to distribute heroin and bond jumping.

Before his trial, Jefferson filed a motion to suppress the heroin seized by Markonni. The district court concluded that Markonni had probable cause to stop Jefferson and denied the motion. Jefferson was convicted of both possession with intent to distribute heroin and bond jumping. He was sentenced to four years on the possession count and one year for bond jumping; the sentences were consecutive.

## II.

In this appeal, Jefferson contends that agent Markonni lacked probable cause to detain him and that the heroin seized during the search of his luggage should not have been admitted into evidence. We agree.

There is no merit to the government's threshold contention that Jefferson was not "seized" within the meaning of the Fourth Amendment. For this contention, the government relies on Justice Stewart's opinion in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion). However, in *Mendenhall* the question presented was whether the defendant was "seized" when two DEA agents asked to see her identification and airline

ticket. Justice Stewart concluded that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 544, 100 S.Ct. at 1872 (Stewart, J., concurring).

■ In this case, agent Markonni did not merely stop Jefferson to ask him a few questions; he stopped him and immediately after identifying himself as a DEA agent requested Jefferson to accompany him to the baggage claims office. In these circumstances, Jefferson could not reasonably believe that he was free to leave.[1] This was a "seizure" within the meaning of the Fourth Amendment.

The government asserts that even if Jefferson was seized, Markonni had a founded suspicion which justified a reasonable investigative stop. Markonni's founded suspicion is based on the following facts: (1) Jefferson arrived from Los Angeles, a known source city for narcotics; (2) Jefferson appeared nervous after Markonni stopped him and identified himself as a federal agent; (3) Jefferson examined the terminal area with unusual intensity and avoided carrying the luggage which contained the heroin; and (4) Jefferson matched the tip that a black male traveled to Los Angeles on September 4 and was returning to Detroit on September 5 with a kilogram of heroin.

Last term, the Supreme Court considered investigative stops in two cases involving drug couriers in airports. In *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the Court held that evidence obtained after an investigative stop need not be suppressed. However,

---

1. We note that Justice Stewart's opinion in *Mendenhall* was joined in by only Justice Rehnquist. Justice Powell's concurring opinion was joined in by the Chief Justice and by Justice Blackmun, and in that opinion he stated: "For me, the question whether the respondent in this case reasonably could have thought she was free to 'walk away' when asked by two government agents for her driver's license and ticket is extremely close." 446 U.S. at 560, n. 1, 100 S.Ct. at 1873 n. 1 (Powell, J., concurring). Justice Powell believed the agents had probable cause to justify the stop whether or not it was a seizure. Four Justices believed that the brief stop to ask for identification was a "seizure." *See also, Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (defendant who was picked up for a custodial interrogation was "seized" within the meaning of the Fourth Amendment).

that case was a plurality decision in which two members of the Court believed that the stop of the defendant did not amount to a seizure; three members of the Court believed that there was probable cause to support the stop; and, four members of the Court believed that the stop was unlawful because it was not supported by probable cause. In *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), seven justices found that a DEA agent lacked probable cause to stop two airline passengers so that the evidence obtained had to be suppressed.

In *Mendenhall*, the defendant's actions suggested that the defendant was attempting to smuggle drugs and evade detection. The defendant was the last passenger to deplane, which enabled her to get a clear view of the terminal and of any DEA agents, and there was evidence that this was a common practice of drug couriers. In addition, the defendant walked slowly through the terminal which allowed her to scan the entire gate area. The defendant walked to the baggage claim area, but instead of claiming baggage she asked for directions to a ticket counter in another terminal. When she reached that ticket counter she turned in her ticket for a new ticket on another airline. There was evidence that drug couriers frequently changed flights en route to avoid detection. On the basis of all this suspicious behavior, the agents made only a brief stop of the defendant to ask for her identification and her airline ticket. Only after the agents discovered that the names on the identification and the ticket did not match, and that the defendant had been in California for only two days, did they ask the defendant to accompany them to the DEA office in the airport.

In *Reid*, the Supreme Court held that DEA agents did not have a founded suspicion which would justify stopping the defendant when he arrived on a flight. In that case the agents contended that they had a well-founded suspicion because: (1) the defendant was traveling from Fort Lauderdale, a known source of cocaine; (2) the defendant arrived in the early morning when law enforcement activity was minimal; (3) the defendant appeared to be trying to conceal the fact that he was traveling with a companion; and (4) the defendant's only luggage was a shoulder bag. The Court concluded that "the agent could not, as a matter of law, have reasonably suspected the petitioner of criminal activity on the basis of these observed circumstances." 100 S.Ct. at 2754.

The conflicting results in *Reid* and *Mendenhall* are explained by the differences in the relevant facts. In *Mendenhall*, the defendant engaged in conduct for which there was no reasonable explanation except as an attempt to avoid detection while smuggling drugs. She took great pains to observe any possible agents in the airport, she walked to the luggage area in the terminal without apparent reason, and she changed her airline ticket en route. By contrast, in *Reid*, actions of the defendant were not unreasonable or suspicious in themselves.

■ In this case, the tip relied on by Markonni was so vague that it was useless to establish probable cause. The fact that Jefferson walked quickly in the terminal, arrived from Los Angeles, and did not pick up his luggage until someone arrived to pick him up at the airport, are not sufficient to create a well-founded suspicion. None of these actions are suspicious in themselves, nor are they suspicious when all are taken together. *See, United States v. Garrett*, 627 F.2d 14 (6th Cir. 1980).

The district court's reliance on *United States v. Prince*, 548 F.2d 164 (6th Cir. 1977) is misplaced. In that case, DEA agents knew that the defendant had stayed at a Holiday Inn in Detroit for only one night and left the next day for Los Angeles with approximately $50,000 in cash. They also learned that the defendant had a police record which involved a drug-related felony. The defendant returned to Detroit six days later, and on the same day DEA agents learned that a large shipment of

heroin was to arrive in Detroit. This Court held that although the tip in itself was not sufficient to create a founded suspicion, it could be considered along with the other facts known to the agents, and that "the sum total of these facts was sufficient to warrant ... belief that ... [the defendant] had committed or was committing the offense of possessing narcotics." 548 F.2d at 166. The fact that the defendant had carried $50,000 in cash to a known source city for drugs and that his return coincided with the arrival of a shipment of heroin were far more suspicious than the facts in this case.

 We also reject the government's contention that Jefferson consented to the search. Although Jefferson told Markonni to "go ahead" and search his luggage, he did so only after he was threatened with illegal detention. Markonni had no right to detain Jefferson or his luggage. The facts in this case are easily distinguished from *United States v. Troutman,* 590 F.2d 604 (5th Cir. 1979). In that case the district court found that the DEA agent improperly stopped the defendant outside of the airport terminal, but that the defendant consented to the search. However, after the agent identified himself, he asked the defendant if he would object to a search of his person and tote bag and the defendant readily agreed to a search. In fact, he started to open his bag on the sidewalk. The agent suggested that they go into the terminal where there would be more privacy, and drugs were discovered during the search. The Fifth Circuit affirmed the district court's finding of consent.

In this case, Jefferson was not simply asked if he would consent to a search; he was hauled off the street and into a private office and told that if he did not consent to a search he would be held until Markonni obtained a search warrant. In view of the fact that Jefferson was threatened with being detained, although Markonni had no right to hold him, his consent cannot be considered voluntary. It was obtained under duress; the alleged consent does not vitiate the illegality of the arrest.

There is no merit to Jefferson's contention that the district court abused its discretion when it denied his motion to sever the counts in the indictment. It was not an abuse of discretion to join the bond jumping charge with the drug charge. *United States v. Ritch,* 583 F.2d 1179 (5th Cir.) *cert. denied* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). The district court properly admitted a letter and two mailgrams into evidence to show that Jefferson had been sent notice of the hearing he failed to attend. These were not offered to prove the truth of the matter asserted, but only to show that Jefferson had been sent notice of the hearings.

The judgment of conviction and sentence on Count One of the indictment is VACATED and REMANDED for further proceedings on that Count. The judgment of the district court is AFFIRMED in all other respects.