948 F.2d 1290
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John BYFIELD, and Ranceford Drake, Defendants-Appellants.
 Nos. 91-3244, 91-3245.
 United States Court of Appeals, Sixth Circuit.
 Nov. 29, 1991.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a drug case in which the defendants pleaded guilty after the district court denied their motions to suppress evidence of cocaine seized during an airport search. The issue presented on appeal is whether the police detectives violated the Fourth Amendment's prohibition against unreasonable searches and seizures. Finding no Fourth Amendment violation, we shall affirm the convictions.
 
 
 2
 * On August 7, 1990, Detectives Karn and Blake of the Columbus, Ohio, Police Department were on the job at Port Columbus International Airport as members of a drug interdiction unit. The detectives saw defendants John Byfield and Ranceford Drake get off a USAir flight that had originated at New York's LaGuardia Airport. The detectives were paying particular attention to this flight because a disproportionate number of its passengers had proved in the past to be drug couriers.
 
 
 3
 Byfield was carrying a small bag as he left the plane, and it appeared to the officers that he was "disoriented." Drake, who deplaned after Byfield, was also carrying a small bag. The men proceeded side-by-side to a public telephone and placed some calls. Byfield then left his carry-on bag with Drake, who remained at the telephone, and went to the men's restroom. Detective Blake followed Byfield into the restroom.
 
 
 4
 Byfield entered a stall, closed the door, and remained there for approximately seven to ten minutes. When he left the stall, Byfield acted as though he had lost something. He went back into the stall, dropped his pants, and felt around inside his trousers. He then left the restroom, returned to the telephone, and placed another call, after which he and Drake went to a snack bar for about 20 minutes.
 
 
 5
 After leaving the snack bar, the two men went back down the USAir concourse to the last gate, which was not in use. They then took an elevator, leaving the officers' sight for a time, but suddenly reappeared on the stairs at the main level.
 
 
 6
 At this point Detective Karn identified Blake and himself as Columbus police officers and asked Byfield and Drake if they would answer some questions. The men agreed to do so, and, at Detective Karn's request, produced plane tickets and identification. The names on the tickets matched those on the identification. There is some question as to the length of time the identification and plane tickets were retained by the officers, but the district court found that all items were returned after inspection.
 
 
 7
 The men told the detectives that they were Jamacians who had come to Columbus to visit a cousin. Detective Karn testified that he advised them that he and Blake were narcotics officers and that some of their actions had aroused suspicion. Karn then asked them if they would consent to a search of their bags; both men consented.
 
 
 8
 The officer searched Byfield's bag first, and found nothing but clothing. He then asked permission to do a pat-down search. Again both men consented. The search of Byfield yielded a small bag of cocaine that had been hidden in his groin area.
 
 
 9
 Byfield was placed face-down on the floor after the discovery of the cocaine, and this caused Drake to become "agitated." Detective Blake unholstered his service revolver, after which Drake too was searched. Drake proved to have a similar quantity of cocaine hidden in his groin area.
 
 
 10
 The detectives placed the men under arrest and read them their Miranda rights. Byfield executed a waiver of his rights and stated that he had purchased the cocaine in New York for $800 and had come to Columbus to party with some girls.
 
 
 11
 The defendants moved the district court to suppress both the evidence of the cocaine and the statements elicited during the airport search. The motions were denied. The issue of the admissibility of the statements has been abandoned on appeal, and we are asked only to consider whether the defendants were detained and searched in violation of their Fourth Amendment rights.
 
 II
 
 12
 A police officer may briefly detain an individual for investigative purposes if the officer has reasonable suspicion, supported by articulable facts, that criminal activity may be present. United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1 (1968). In evaluating the validity of an investigative detention, "we must consider the totality of the circumstances--the whole picture." Sokolow, 490 U.S. at 8.
 
 
 13
 Factual findings made by a district court in ruling on a motion to suppress physical evidence are binding on this court unless clearly erroneous. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). Where the district court's factual findings are not clearly erroneous, our inquiry is limited to determining whether the ruling is supported by substantial evidence. United States v. Moore, 917 F.2d 215 (6th Cir.1990), cert. denied, 111 S.Ct. 1590 (1991).
 
 
 14
 In the case at bar, the initial encounter between the detectives and the defendants was clearly unexceptionable. "Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, [and] by asking him if he is willing to answer some questions." United States v. Flowers, 909 F.2d 145, 147 (6th Cir.1990) quoting Florida v. Royer, 460 U.S. 491, 497 (1983). But a consensual encounter may evolve into a Fourth Amendment "seizure" under circumstances where a reasonable person would have believed he was not free to leave. INS v. Delgado, 466 U.S. 210, 215 (1984).
 
 
 15
 In Florida v. Royer, 460 U.S. 491 (1983), two detectives approached the defendant, who seemed to fit the drug courier profile, and asked him if he would speak with them. He replied that he would. After a brief exchange, the detectives identified themselves as narcotic officers, told the defendant that they suspected him of carrying narcotics, and asked him to accompany them to what was described as a "large storage closet." He followed the officers to the room as requested, and a search of his two suitcases revealed that he was carrying drugs. The Court held that the search was invalid because it took place when the defendant had been illegally confined. The Court noted, however, that
 
 
 16
 "if the events in this case amounted to no more than a permissible police encounter in a public place or a justifiable Terry -type detention, Royer's consent, if voluntary, would have been effective to legalize the search of his two suitcases." Id. at 501.
 
 
 17
 In the case at bar, we are satisfied that the detectives had reasonable suspicion that criminal activity might be present. The defendants came from a drug-source city on a flight frequented by drug couriers, and the activities of Byfield in the men's restroom were consistent with efforts to hide drugs on his person. Given the numerous phone calls and the strange itenerary followed in the airport, we think the detectives had adequate grounds for making a brief investigative stop of the Terry type.
 
 
 18
 Articulable suspicion turns on all the circumstances surrounding the actions of the suspected wrongdoer, and his suspicious behavior need only be recognizable by one versed in law enforcement. United States v. Knox, 839 F.2d 285, 290 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989). Detectives Karn and Blake were versed in law enforcement, and their actions in this case look to us like nothing more than good police work.
 
 
 19
 Because the Fourth Amendment was not violated by the stop, the defendants' consent to the search was not vitiated; and the consent having been valid, the fruits of the search were admissible. United States v. Williams, 754 F.2d 672 (6th Cir.1985).
 
 
 20
 AFFIRMED.
 
 
 21
 CONTIE, Senior Circuit Judge, concurring.
 
 
 22
 I agree with the result reached by the majority. I write separately only to clarify the majority's analysis, and to make plain the distinction between a permissible police encounter, which is not subject to the fourth amendment, and a Terry stop, to which the fourth amendment is applicable.
 
 
 23
 Each case raising a fourth amendment issue "must be judged on its own facts." United States v. Saperstein, 723 F.2d 1221, 1227 (6th Cir.1983) quoting United States v. Mendenhall, 446 U.S. 544, 565 (1980). In particular, airport encounters between a police officer and citizen present "endless variations in the facts and circumstances, so much variation that it is unlikely that the courts can reduce to a sentence ... a rule that will provide unarguable answers to the question whether there has been an unreasonable search or seizure." United States v. Grant, 920 F.2d 376, 382 (6th Cir.1990). In each case, however, this circuit has applied the following test to determine whether a fourth amendment seizure has occurred: "whether, under the totality of the circumstances, a reasonable person would have believed he or she was not free to walk away." Saperstein, 723 F.2d at 1225. If a reasonable person would not feel free to leave, then the defendant has been subjected to a Terry stop which requires reasonable suspicion. Terry v. Ohio, 392 U.S. 1 (1968).
 
 
 24
 Not all police encounters with the public are fourth amendment seizures of the Terry type, as it is recognized that the police have the right to address people conversationally with the hope of voluntary exchange without meeting the standards of the fourth amendment. United States v. Garcia, 866 F.2d 147, 150 (6th Cir.1989). As such, the police have the right to ask member of the public for identification, United States v. Collis, 766 F.2d 219, 221 (6th Cir.), cert. denied, 474 U.S. 851 (1985), can question an individual in a non-threatening manner, United States v. Moore, 675 F.2d 802, 808 (6th Cir.1982), cert. denied, 460 U.S. 1068 (1983), and can ask to examine an individual's airplane ticket, Saperstein, 723 F.2d at 1227. However, permissible police encounters may escalate into Terry -type stops. Circumstances which might indicate that a permissible encounter has been elevated into a Terry stop include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554.
 
 
 25
 In the present case, the district court concluded that a Terry stop did not occur, but that the appellants were only subjected to a Mendenhall encounter. The question of whether or not a individual has been subjected to a fourth amendment seizure involves questions of fact that cannot be reversed unless clearly erroneous. Grant, 920 F.2d at 381; United States v. Rose, 889 F.2d 1490, 1494 (6th Cir.1989). Although the district court correctly identified most of the factors critical to a finding that a seizure did not occur, it overlooked one factor which was significant. Detective Karn testified that when he identified himself to the appellants as a narcotics agent, he also told them that he suspected them of drug-related activity. Joint Appendix at 75. The courts have held that accusing an individual of suspicious behavior is a factor which weighs in favor of finding that a Terry -type seizure has occurred. Collis, 766 F.2d at 221 (accusing defendant of being a drug courier would effectively compel compliance). In Saperstein, the court held that an agent who, after asking a suspect in an airport whether he would answer some questions, accused the suspect of involvement in drug related activities effected a Terry stop because, while being asked "clearly incriminating questions," the defendant reasonably believed he was not free to leave. Saperstein, 723 F.2d at 1226. The court held that the district court's failure to recognize the officer's accusation as a crucial factor was clear error. Id. at n. 7.
 
 
 26
 Although this circuit has not yet held that an accusation, without more, is enough to transform an encounter into a Terry stop, the Eighth Circuit has so held. In United States v. Sadosky, 732 F.2d 1388 (8th Cir.), cert. denied, 469 U.S. 884 (1984), police officers approached a suspect in an airport, identified themselves, and asked the suspect if he would be willing to answer a few questions. At that point, no seizure had occurred; however, the two officers then stated that "they were investigating possible narcotics violations, and that they wanted to question [the defendant] due to his unusual behavior." Id. at 1392. The court concluded that these statements indicated to the defendant "that the agents' investigation was in fact focused on him and implied that [the defendant's] failure to cooperate could lead to his arrest." Id. Thus, a Terry stop occurred which required fourth amendment protection.
 
 
 27
 In the present case, given the fact that the officer accused the appellants of suspicious behavior, and in light of our decisions in Saperstein and Collis identifying this factor as persuasive in determining whether a Terry stop has occurred, I believe that the accusation in this case was sufficient to transform the initial encounter into a Terry -type seizure. Sadosky, 732 F.2d at 1392. Once the police begin to single out individuals as suspects, rather than just engaging them in general discourse, a reasonable individual would likely feel the compulsion which brings into play the protections of the fourth amendment.
 
 
 28
 Florida v. Royer, 460 U.S. 491 (1983), relied on by the majority, is not helpful. In Royer, the Court was not required to resolve the fine line between a Terry -type stop and a casual police encounter because the Court there found that the defendant had been subjected to an arrest requiring probable cause. However, in the present case, the appellants were not sufficiently restrained to require a showing of probable cause.
 
 
 29
 Even though the majority, in reliance on Royer, avoids expressly deciding whether the present confrontation was a Terry-type stop or a casual police encounter, for the reasons stated above I believe that the appellant was seized within the meaning of the fourth amendment. We should not avoid drawing this distinction, as the majority has, simply because reasonable suspicion exists, and thus the facts would support a finding that either a Terry stop or a Mendenhall-type police encounter occurred.