959 F.2d 237
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ricardo SOTOLONGO, Defendant-Appellant,
 No. 90-5924.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1992.
 
 Before NATHANIEL R. JONES and SUHRHEINRICH, Circuit Judges, and FEIKENS, Senior District Judge*
 PER CURIAM.
 
 
 1
 Defendant appeals his conviction and sentence following a guilty plea to possession with intent to distribute cocaine. For the reasons that follow, we affirm.
 
 I.
 
 2
 On October 19, 1988, defendant Ricardo Sotolongo, a Cuban national, was travelling from Miami, Florida to Milwaukee, Wisconsin. As Sotolongo was about to board a connecting flight to Memphis International Airport, he was approached by two plainclothed Drug Enforcement Administration ("DEA") agents who showed him their badges and identification cards. Their weapons were neither drawn nor visible. The agents asked Sotolongo if they could speak with him, and he said "Sure." The agents then asked to see Sotolongo's airline ticket and some form of identification.
 
 
 3
 After looking at Sotolongo's ticket and license, the agents stated that they were narcotics officers looking for drugs or evidence of drug trafficking, and asked if they could look inside his shoulder bag. Sotolongo replied, "Yes, go ahead." The agents then asked Sotolongo if he would mind stepping across to the gate because it afforded greater privacy. Sotolongo proceeded over to the gate and the agents followed him. Once at the gate, the agents again asked Sotolongo if they could look inside his bag, and he said, "Yes." The officers found a package of cocaine inside the shoulder bag.
 
 
 4
 On January 18, 1989, the district court denied Sotolongo's motion to suppress and he thereafter entered a guilty plea. On May 16, 1990, Sotolongo was sentenced following an evidentiary hearing which inquired into whether two prior drug convictions in the State of Wisconsin were constitutionally valid for purposes of enhancing his sentence under the United States Sentencing Commission Guidelines. After determining that the prior convictions were constitutionally valid, the district court classified Sotolongo as a career offender and imposed a sentence of 210 months imprisonment.
 
 II.
 A.
 
 5
 Defendant argues that the airport stop amounted to a "seizure" within the meaning of the Fourth Amendment, and therefore required a "reasonable suspicion" of criminal activity. Whether a seizure has occurred depends upon whether under the totality of the circumstances, a reasonable person would have believed he or she was not free to walk away. United States v. Mendenhall, 446 U.S. 544, 554 (1980). Factors which indicate a seizure include the threatening presence of several officers, the display of a weapon, physical touching or abusive language. Id. Not all police-citizen encounters are seizures for purposes of the Fourth Amendment. A law enforcement officer does not violate the Fourth Amendment by merely approaching an individual in a public place, by asking him if he is willing to answer some questions or by putting questions to him if the person is willing to listen. Florida v. Royer, 460 U.S. 491, 497 (1983). See also United States v. Collis, 766 F.2d 219, 221 (6th Cir.) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets"), cert. denied, 474 U.S. 851 (1985).
 
 
 6
 In Collis, we held that the defendant was not seized where a DEA agent approached him, asked for his airline ticket and identification, and requested that he accompany the agent to the baggage claim area to retrieve his license from his luggage. We explained: "Absent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, Agent Anderson's quest for additional information from the defendant does not constitute a seizure under the fourth amendment." 766 F.2d at 221. Likewise, in United States v. Garcia, 866 F.2d 147 (6th Cir.1989), we held that police officers did not seize the defendant by approaching him in a car located in the airport parking lot and asking to see his airline ticket and identification. We explained that no seizure had occurred because "[t]here were only two guards present, no weapon was displayed, there was no physical touching of Garcia, [and] the agents did not raise their voices or threaten Garcia in any way." 866 F.2d at 152. Similarly, in this case, the facts do not support a conclusion that a seizure occurred. The agents acted in a completely non-coercive and non-intimidating manner: they did not display any weapons, touch Sotolongo,[2] or otherwise indicate that his compliance to their request for information was compelled.
 
 
 7
 Furthermore, the instant case differs markedly from United States v. Saperstein, 723 F.2d 1221 (6th Cir.1983) and United States v. Knox, 839 F.2d 285 (6th Cir.1988), cert. denied, 490 U.S. 1019 (1989) because in those cases the defendant, in addition to being stopped, was requested to accompany DEA agents to an office for purposes of extensive questioning. Unlike the prospect of interrogation, the agents' offer to allow Sotolongo to step over to an area of the terminal which would afford him greater privacy before searching his shoulder bag did not signal that Sotolongo was not free to leave. Under our holdings in Collins and Garcia, we therefore conclude that the airport stop of Sotolongo did not rise to the level of a seizure.
 
 B.
 
 8
 Sotolongo next argues that the district court improperly sentenced him as a career offender under U.S.S.G. § 4B1.1, which requires "at least two prior felony convictions of either a crime of violence or a controlled substance offenses," by taking into account two prior drug convictions in the State of Wisconsin. "Any valid previous conviction falling within the provisions of Chapter Four of the guidelines [ (Criminal History and Criminal Livelihood) ] is to be considered in computing the criminal history score. See U.S.S.G. § 4A1.2, application note 6." United States v. Unger, 915 F.2d 759, 761 (1st Cir.1990), cert. denied, 111 S.Ct. 1005 (1991). The government bears the initial burden of proving the fact of conviction. The burden then shifts to the defendant to establish that the earlier conviction was constitutionally invalid. Id.
 
 
 9
 The government argues that Sotolongo did not have the authority to raise at the time of sentencing the claim that his prior state convictions were invalid because he neither appealed his convictions through the appropriate state courts, nor previously attacked them in a federal forum. The government points out that U.S.S.G. § 4A1.2, application note 6, was amended effective November 1, 1990 to provide that "sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted." (Emphasis supplied). Prior to the amendment, application note 6 stated more generally that "convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." According to the government, this amendment indicates that the Sentencing Commission intended that only those convictions which the defendant can establish were reversed or vacated prior to his sentencing, may be attacked. Defendant, on the other hand, relies upon United States v. Jones, 907 F.2d 456 (4th Cir.1990), cert. denied, 111 S.Ct. 683 (1991), a case decided prior to the November 1, 1990 amendment, which held it is proper for a district court to entertain a constitutional challenge to a state conviction in determining a defendant's criminal history category.
 
 
 10
 We agree with the government's interpretation of the amendment to U.S.S.G. § 4A1.2, application note 6, as precluding the district court from reviewing the constitutionality of Sotolongo's prior state court convictions. Prior to the amendment, application note 6 to U.S.S.G. § 4A1.2 was "utterly silent with respect to the authority to declare convictions invalid," and thus, according to the dissenting judge in Jones, "provide[d] no basis to overcome the presumptive lack of federal jurisdiction to do so." Jones, 907 F.2d at 472. Following the amendment, application note 6 to U.S.S.G. § 4A1.2 now affirmatively limits a district court's authority to consider convictions to those which have previously been ruled constitutionally invalid. We find this language to be unambiguous. Because Sotolongo failed to raise any challenge to his state court convictions prior to the sentencing hearing, it was unnecessary for the district court to conduct an evidentiary hearing to ascertain the constitutional validity of the convictions. The district court properly sentenced defendant as a career offender.
 
 
 11
 AFFIRMED.
 
 
 12
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 13
 The majority finds that no seizure occurred in this case. I respectfully dissent.
 
 
 14
 Sotolongo contends that the district court erred in failing to address his contention at the suppression hearing that his questioning in the airport amounted to a seizure, and that this seizure was made without the requisite reasonable suspicion, thus violating his Fourth Amendment rights. The court, in its oral holding, addressed only the question of consent; it did not speak at all to the propriety of the initial stop and whether it constituted a seizure. The court's failure to make an inquiry into whether the stop constituted a seizure and, if so, whether that seizure was based upon reasonable suspicion is significant because "given the occurrence of [an] illegal seizure, any evidence gathered pursuant to that seizure [is] necessarily tainted and, thus, inadmissible." United States v. Saperstein, 723 F.2d 1221, 1230 (6th Cir.1983); see also United States v. Garcia, 866 F.2d 147, 150 (6th Cir.1989) ("Once [the] point of detention has been reached, the officers must have a reasonable articulable suspicion, or else the stop or detention is illegal, and the fruits of that search must be suppressed.").
 
 
 15
 Our cases dictate that analysis of this type of airport stop and search must be conducted as follows. First, we must determine whether a seizure occurred. If so, we must then determine whether that seizure was supported by "reasonable articulable suspicion" as required by Terry v. Ohio, 392 U.S. 1, 20-27 (1968) and its progeny. If we find the stop was supported by the requisite reasonable suspicion, the investigation will proceed to the circumstances of the search and attempt to determine whether the defendant consented to the search after the lawful Terry stop. See Garcia, 866 F.2d at 150 (outlining this three-step procedure); see also Saperstein, 723 F.2d at 1224-30 (finding that Florida v. Royer, 460 U.S. 491 (1983) and United States v. Mendenhall, 446 U.S. 544 (1980) require an investigation as to whether a seizure occurred and then whether the seizure was proper). If, however, the court determines that no seizure occurred, and that the stop was a mere encounter under Mendenhall, then the analysis focuses exclusively on whether the defendant consented to the search. See, e.g., Garcia, 866 F.2d at 151 (finding no seizure and consent to search); United States v. Collis, 766 F.2d 219, 221 (6th Cir.), cert. denied, 474 U.S. 851 (1985) (finding no seizure).
 
 
 16
 Turning then to the case before us, we must determine whether the officers' conduct at the airport with Sotolongo constituted a seizure. In Mendenhall, the Court suggested that police officers may approach a person for any reason in order merely to speak to that person. 446 U.S. at 554-55. The point at which a "mere encounter" becomes a seizure is the point at which "under the totality of circumstances, a reasonable person would have believed he or she was not free to walk away." Saperstein, 723 F.2d at 1225. I am convinced that the facts reveal that Sotolongo reasonably believed that he was not free to leave and was, therefore, seized.
 
 
 17
 Determining whether, under the circumstances of a particular case, a seizure has occurred is necessarily a fact-specific inquiry, but over the years, the courts have developed a number of factors that assist in determining whether a seizure has occurred. In Mendenhall, the Supreme Court articulated several factors that it considered to be relevant, including the presence of more than one officer, the display of a weapon, the physical touching of the person stopped, and the use of the officer's authority to suggest that compliance with his or her requests might be compelled. 466 U.S. at 554. Additional factors considered by courts to be relevant include the following: taking the person's identification or airplane ticket, Saperstein, 723 F.2d at 1226; moving the stopped person to another location where he or she had not intended to go, Garcia, 866 F.2d at 151; officers identifying themselves as narcotics agents and then immediately asking to search the person's bag, United States v. Drinkard, 900 F.2d 140, 142 (8th Cir.1990); failing to tell the person stopped that he or she is free to leave, id.; and suggesting that the person is singled out for a drug investigation. United States v. Gonzales, 842 F.2d 748, 751 (5th Cir.1988).
 
 
 18
 In this case, a sufficient number of these factors were present to suggest that Sotolongo was seized. First, he was approached by two officers, one of which was wearing a gun in the belt of his trousers. He was asked for his ticket and identification, which he gave to the officers. The record does not indicate that these things were ever returned to him. The officers asked Sotolongo to accompany him to a more private and secluded place, which turned out to be an unoccupied gate across from the gate from which Sotolongo's plane was to depart. Sotolongo testified that one officer stood in front of him, and the other stood at his side, touched his arm, and escorted him over to the other gate. Sotolongo's testimony was not rebutted by the testimony of Officer Bevel, who testified that there was no reason why the officers would need to touch the defendant, but did not deny that they had in fact touched him. The officers identified themselves as drug agents looking for contraband, and they immediately asked Sotolongo if they could look in his bag. In fact, the officers asked Sotolongo several times if they could look in his bag. Sotolongo was never told that he was free to leave.
 
 
 19
 The government argues that this case is analogous to Collis, in which we found that no seizure had occurred. I disagree. In Collis, the defendant was tapped on the shoulder outside the airport and asked for identification by a single officer. 766 F.2d at 220. The defendant produced a credit card and his airline ticket. The officer returned the defendant's identification and ticket and asked if he had any further identification. Id. at 220-21. The defendant replied that his driver's license was packed in his checked luggage, at which point the officer asked if they could go together to the baggage claim to retrieve it. The defendant agreed. Significantly, the court noted that Collis was not a case in which "the agent constructively constrained or effectively compelled compliance from the defendant by making the [search] request immediately after accusing the defendant of being a drug courier or by retaining the defendant's ticket or other property." Id. at 221. In fact, the officer did nothing more than simply ask the defendant for additional identification, which the defendant agreed to provide. Further, the officers merely accompanied the defendant to the baggage claim area, where he had to go anyway to retrieve his luggage.
 
 
 20
 By contrast, in the instant case, Sotolongo was stopped by two officers, one armed, his identification and ticket were taken, and he was moved to another, more secluded location away from the gate from which his flight was to depart. Furthermore, the officers identified themselves as drug agents looking for contraband and immediately asked if they could search Sotolongo's shoulder bag. In Gonzales, the Fifth Circuit found that an officer's declaration that he was "working narcotics" followed by an immediate request to search the defendant's bag was sufficient evidence to find that a seizure had taken place. 842 F.2d at 752. The court reasoned that the officer clearly implied by these acts that the defendant was the subject of a drug investigation and, thus, was not free to leave. Id. I would find that all the factors mentioned, in addition to the implication that Sotolongo was a drug suspect, distinguish this case from Collis and are sufficient to find that a seizure took place.
 
 
 21
 Because a seizure occurred, the stop in this case was illegal as a matter of law. The officers and the government have conceded that there was no reasonable basis for stopping Sotolongo. According to the officers' own testimony, Sotolongo was singled out and followed due to his shabby, unkempt appearance. Furthermore, Officer Bevel testified that he thought that Sotolongo was an African American. Interestingly, the officers involved in this case were also involved in the stop that was the subject of United States v. Taylor, No. 89-6396, 1992 WL 1948 (6th Cir. Feb. 10, 1992) (en banc). In Taylor, these same officers, under virtually identical circumstances, stopped a person for not "fitting in" who was also black. In Taylor, Officer Bevel testified that at least 75% of the persons the officers followed at the airport were black. Id. at 18 n. 1 (Keith, J., dissenting). What clearly seems to be happening at the Memphis Airport is that officers are stopping poorly dressed, black persons for questioning without any reasonable suspicion at all. Then after seizing them, they intimidate these persons into permitting a search. The difference between this case and Taylor is that the facts as found by the district court in this case constitute a seizure as a matter of law. Thus, the illegal seizure tainted Sotolongo's later consent.
 
 
 22
 As noted previously, if a seizure is illegal, then all the fruits of any subsequent search must be suppressed. See Garcia, 866 F.2d at 150; Saperstein, 723 F.2d at 1230. I would therefore reverse the district court's ruling on Sotolongo's motion to suppress and, therefore, vacate Sotolongo's conviction.
 
 
 
 *
 The Honorable John Feikens, Senior District Judge for the United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 Although Sotolongo testified at the suppression motion that one of the two officers touched his left arm in walking over to the gate, the district court accepted the agents' version of the encounter as the operative facts. Where there is a "swearing contest" between the defendant's testimony and that of a police officer, "we see no justification for disturbing the finding of the trial judge, whose opportunity to observe the witnesses' demeanor renders his judgment as to their credibility superior to that of any appellate tribunal." Garcia, 866 F.2d at 151-52