914 F.2d 259
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lavonda Lynn WEBSTER, Defendant-Appellant.
 No. 89-6476.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1990.
 
 Before KENNEDY, BOGGS and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Lavonda Webster appeals following a conditional plea of guilty to a violation of 21 U.S.C. Sec. 841(a)(1), possession with intent to distribute cocaine. Defendant appeals the denial of a motion to suppress the narcotics seized in the airport search on the grounds that her fourth amendment rights were violated. Defendant also claims that she was denied her sixth amendment right to confrontation by the district court's refusal to require the government to disclose a police report at the suppression hearing. For the reasons that follow, we AFFIRM.
 
 I.
 
 2
 On June 6, 1988, Airport Police Officers Dave Bunning and Doug Eldridge of the Cincinnati International Airport were watching Delta Flight 450 from Los Angeles, California for drug courier activity. The officers were observing the flight because they had received intelligence data from the Los Angeles narcotics unit indicating a heavy flow of narcotics from Los Angeles to Cincinnati and then on to the Dayton, Ohio area. The airport police had also made a number of drug-related arrests from this flight in the previous year.
 
 
 3
 Officer Bunning testified that at 6:05 a.m. he noticed three men sitting in the waiting area. Bunning stated that his attention was drawn to these individuals because they were dressed in designer clothing and wore a great deal of gold jewelry. He also noted that they were the only people in the gate area which had about 200 seats and that they were seated behind a podium which had the effect of concealing them. Flight 450 arrived at approximately 6:20 a.m. All three men met defendant at the gate as she deplaned, but did not exchange oral or physical greetings with her, except a nod from the oldest of the three.
 
 
 4
 The officers decided to follow the individuals as they walked down the airport concourse to the main lobby. According to Officer Bunning, both the defendant and one of the younger men repeatedly glanced over their shoulders as they crossed the concourse. The officer further testified that upon arriving at the main area, one of the men pointed to a brown Oldsmobile car bearing a Montgomery County, Ohio license plate. Bunning testified that he recognized the car as one he had seen at the airport on several other occasions at about the same time the evening flight from Los Angeles would arrive. Bunning stated that he found this significant because the bulk of narcotics through the airport had been going to Dayton, Ohio, which is in Montgomery County. The officers also noted that the defendant did not retrieve any luggage from the baggage claim area. Webster was carrying one piece of carry-on luggage.
 
 
 5
 Officer Bunning approached the defendant as the group exited the building and headed toward the parked automobile. Bunning informed the defendant that he was a police officer and that he wanted to ask her some questions. Defendant consented. At Bunning's request, the defendant produced a one-way ticket purchased with cash about 45 minutes before the flight. Also at Bunning's request, the defendant showed the officer a California driver's license in her name. Bunning then asked the three men to produce identification. They were unable to do so, but informed the police that their names were John, Shawn, and Jeffrey Owensby. A check on John Owensby showed that he had a temporary Ohio driver's license with an address as Pickway Correctional Institute in Orient, Ohio. John Owensby denied knowing defendant's name, stating that he was picking her up for a friend.
 
 
 6
 At this point in time the defendant asked Officer Bunning why he had stopped her. Bunning stated that he was a narcotics officer looking for narcotics coming through the airport. He then sought consent to search her bag. Defendant initially consented to the search, but upon being instructed by Bunning that she had the right to refuse, withdrew her consent. Bunning then informed Webster that he was seizing her bag so that a narcotics dog could sniff it, after which he would seek a search warrant. Bunning invited the defendant to accompany him to the Airport Police Headquarters, which was less than 50 yards from the scene, where two narcotic dogs were available. He also notified her that he would need a telephone number in the area in order to return the bag to her if he could not obtain a search warrant. Defendant left her bag with the airport police and departed. Officer Bunning brought the dogs to the bag within five minutes of the time he took the bag from defendant. Both police dogs altered on defendant's bag. A search warrant was obtained and cocaine was found inside the bag.
 
 
 7
 Defendant was indicted on June 8, 1988 on one count of possession with intent to distribute 1070 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Defendant filed a motion to suppress the evidence and the matter was referred to a magistrate who conducted an evidentiary hearing. The magistrate subsequently issued an opinion denying the defendant's motion. The district court affirmed.
 
 
 8
 On November 21, 1989 the defendant pled guilty to the count and was sentenced to sixty months' imprisonment. This timely appeal followed.
 
 II.
 
 9
 Defendant's first argument on appeal is that the failure of the government to provide her with a copy of a police report prepared by Officer Bunning regarding the airport incident which was utilized by him while testifying at the suppression hearing constitutes reversible error. Defense counsel requested the report after eliciting from Bunning on cross-examination that he had referred to the report on direct examination to refresh his recollection of the events at the airport. The government objected, and the magistrate denied defendant's request. The district court affirmed the denial.
 
 
 10
 Specifically, defendant now argues that she was entitled to examine the report under the Jencks Act, 18 U.S.C. Sec. 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure.[1] Defendant therefore argues that the proper remedy is to strike Bunning's testimony and to evaluate Defendant's suppression motion entirely on the basis of the search warrant affidavit and her testimony at the hearing. The government concedes that it was error not to furnish defendant with a copy of the police report but submits the failure was harmless error. We agree.
 
 
 11
 Rule 12(i) of the Federal Rules of Criminal Procedure directs that Fed.R.Crim.P. 26.2 is to govern hearings on motions to suppress evidence. Rule 26.2 provides in pertinent part:
 
 
 12
 (a) Motion for Production. After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government, or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.
 
 
 13
 Fed.R.Crim.P. 26.2(a). The Advisory Committee Notes reveal that Rule 26.2 was intended to provide a counterpart to the Jencks Act, 18 U.S.C. Sec. 3500[2], thereby enabling both parties in a criminal trial to obtain the prior statements of witnesses. "S.1437, 95th Cong. 1st Sess. (1977), would place in the criminal rules what is now 18 U.S.C. Sec. 3500...." Id. Thus it stands to reason that any law interpreting a provision of the Jencks Act should be applicable to a similar provision of Rule 26.2.
 
 
 14
 The Supreme Court has held that Jencks Act violations may be subject to the harmless error rule, Rosenberg v. United States, 360 U.S. 367 (1959), cautioning, however, that the doctrine itself must be "strictly applied." Goldberg v. United States, 425 U.S. 94, 111 (1976). See also United States v. Pope, 574 F.2d 320, 326 (6th Cir.), cert. denied, 439 U.S. 868 (1978). The critical issue is whether the failure to furnish the statement itself caused any actual prejudice to the defense in the context of all the circumstances of the trial. Goldberg, 425 U.S. at 326.
 
 
 15
 Here the defendant had possession of Officer Bunning's affidavit prior to the suppression hearing. A comparison of the two documents reveals that the information concerning the events of June 6, 1988, is virtually identical. After a careful review of the record, we find that the only substantive differences between the two documents involved the seizure of defendant's bag, an issue not contested by defendant on appeal. As stated by the Supreme Court in Rosenberg, supra, "when the very same information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and fair administration of justice to order a new trial. There is such a thing as harmless error and this clearly was such." Id. at 376. Moreover, the defendant has failed to articulate any actual prejudice to this court or to the district court. Thus we hold that, although the police report clearly fell within the parameters of 18 U.S.C. Sec. 3500 and Fed.R.Crim.P. 26.2, and should therefore have been turned over to defendant, there was no prejudice to the defendant and the error was therefore harmless.
 
 B.
 
 16
 In her second contention on appeal, defendant argues that she was "seized" within the meaning of the fourth amendment because she did not feel free to leave the airport without first speaking with the agents who had stopped her. She further argues that the seizure occurred without any reasonable articulable suspicion that she was carrying drugs. Thus, defendant alleges that the evidence obtained therefrom should have been suppressed.
 
 
 17
 It is clear that not all personal intercourse between policemen and citizens involves seizures of persons. A "seizure" occurs only when the officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen...." Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). It is also settled that a police officer can approach a person for any reason and request to speak to him without running afoul of the fourth amendment. Florida v. Royer, 460 U.S. 491, 497 (1983). See also United States v. Collis, 699 F.2d 832, 834-35 (6th Cir.), cert. denied, 462 U.S. 1119 (1983). "Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." Royer, 460 U.S. at 497 (citing United States v. Mendenhall, 464 U.S. 545, 555 (1980)).
 
 
 18
 Once the conversation reaches the point that a reasonable person would no longer feel free to depart, however, the officer must have a reasonable articulable suspicion for the detention. Otherwise, the detention will be considered illegal and fruits of the search will be suppressed. Mendenhall, 446 U.S. at 549. This is the classic Terry stop.[3] In assessing whether a person has been seized within the meaning of the fourth amendment, the Mendenhall court instructed that the totality of the circumstances test is to be applied. Id. at 554; United States v. Sokolow, 109 S.Ct. 1581 (1989).
 
 1.
 
 19
 Upon review of the record, we conclude that the initial stop was a permissible police-citizen encounter. Officer's Bunning's approach was non-coercive. At the suppression hearing, defendant testified that when the officers asked to speak to her, she said "yes." She also voluntarily handed him her plane ticket and driver's license. Her freedom of movement was not restrained, she was not asked to accompany the police officers anywhere,[4] and she was free to leave the airport at any time, which she did. In addition, the officers imposed no physical force or display of authority. See United States v. Rose, 889 F.2d 1490, 1494 (6th Cir.1989); United States v. Collis, 766 F.2d 219, 221 (6th Cir.) cert. denied, 474 U.S. 851 (1985). As in Mendenhall, defendant "was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions." 446 U.S. at 555. Moreover, the police were not required to inform her that she was free to decline to answer questions in order to quarantee voluntariness. Id.
 
 
 20
 To the extent defendant's rendition of the facts differs from that of both the magistrate and the district court, we reject her claims. Findings of fact are subject to a clearly erroneous standard of review. Fed.R.Civ.P. 52(a); United States v. Garcia, 866 F.2d 147, 151 (6th Cir.1989). We can find no justification in the record for disturbing those findings.
 
 2.
 
 21
 Although we find that the initial stop of defendant was not a "seizure", we also find, as did the district court, that even if the agents' initial stop amount to a "seizure" for purposes of the fourth amendment, the police had a reasonable particularized suspicion that the defendant was engaging in criminal activity. At the time of the initial stop, the narcotics officers knew that the defendant had just arrived from Los Angeles, a known "source city", and that this particular flight, Delta 450, had been the site of numerous prior drug arrests. The officers had noted that defendant did not pick up any luggage, after having arrived from a city nearly 2000 miles away. Defendant's companions, the officers observed, were expensively dressed and had positioned themselves so as to appear inconspicuous. Further, defendant's companions did not appear to be intimate with defendant. As defendant and her companions walked through the airport, defendant and at least one of them glanced nervously about. Further, Bunning recognized their car as one with a Montgomery license plate that he had seen several times previously in the early evening when Delta Flight 810 from Los Angeles would arrive.
 
 
 22
 While these facts, viewed separately, are consistent with innocent behavior, when viewed in their totality they warrant further investigation. Under the totality of the circumstances, we hold that these facts were sufficient to create a reasonable suspicion on the part of the police to stop defendant briefly for investigatory purposes. We also find that the period of detention was not unreasonably lengthy so as to require probable cause. Both the police and defendant testified that the police questioned defendant for approximately ten minutes and then allowed her to leave.
 
 
 23
 Accordingly, we AFFIRM the district court's denial of defendant's motions to suppress and the judgment of conviction.
 
 
 
 [1]
 Defendant also relies upon Fed.R.Evid. 612 and 613. We find, however, that it is not necessary to analyze these claims individually since the result under Rule 612 and 613 is the same as that produced under Fed.R.Crim.P. 26.2 and 18 U.S.C. Sec. 3500. See Fed.R.Evid. 612 advisory committee's note ("The purpose of the rule is the same as that of the Jencks statute, 18 U.S.C. Sec. 3500 ...")
 
 
 [2]
 The Jencks Act requires the court, on motion of the defendant, to order the government to produce any statement of a prosecution witness relating to the subject to which the witness has testified on direct examination. 18 U.S.C. Sec. 3500(b)
 
 
 [3]
 Terry v. Ohio, 392 U.S. 1 (1968)
 
 
 [4]
 In United States v. Garcia, 866 F.2d 147 (6th Cir.1989), this Court noted that one occurrence that seemed to distinguish "seizures" from casual contacts between police and citizens was when the defendant was asked to accompany the law enforcement officials to a place which the defendant had not planned to go. Id. at 151