**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Dennis Edward COLLIS,
Defendant-Appellee.**

No. 82–1127.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 20, 1982.

Decided Feb. 16, 1983.

Certiorari Denied June 13, 1983.
See 103 S.Ct. 3088.

Leonard R. Gilman, U.S. Atty., Keith J. Norman, Asst. U.S. Atty., Detroit, Mich.,

Patty M. Stemler, Sidney Glazer, Appellate Section, Crim.Div., Washington, D.C., for plaintiff-appellant.

N.C. Deday Larene, Fink & Larene, Detroit, Mich., for defendant-appellee.

Before LIVELY and KRUPANSKY, Circuit Judges, and CECIL,* Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This is an appeal from an Order of the District Court for the Eastern District of Michigan, 528 F.Supp. 1023, suppressing 654.86 grams (gross weight) of cocaine relating to the criminal prosecution of Dennis Edward Collis (Collis) for possession with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). The matter is properly before this Court pursuant to 18 U.S.C. § 3731.[1]

The factual findings of the lower court, entered following a two-day evidentiary hearing, reveal the following sequence of events. On June 4, 1981, Special Agents Thomas Anderson (Anderson) and Gregory Demmink (Demmink) of the Drug Enforcement Agency (DEA) were conducting surveillance at the Detroit Metropolitan Airport. The agents were monitoring flights arriving from Miami, Florida because of that city's reputation as a narcotics "source city."

In the course of their surveillance, the agents noticed Collis deplane from Delta Airlines Flight 1132 which had originated in Miami. Collis, carrying a shoulder bag, was one of the first passengers to disembark. He proceeded rapidly from the gate toward the baggage claim area.

Anderson followed Collis while Demmink remained at the gate to monitor the remaining passengers off-load. Anderson noted that Collis turned to look at him on several occasions as defendant proceeded through the airport concourse to the baggage claim area. As he arrived at the baggage claim area Collis nodded to an unidentified male who, shortly thereafter, departed from the terminal while Anderson left through another exit. Outside the terminal Anderson observed Collis walking on the sidewalk and the unidentified male standing beside a nearby parked car.

At this point Anderson elected to question the defendant. Anderson approached Collis from behind, lightly tapped him on the arm, displayed his credentials and orally identified himself as a DEA agent. Anderson requested permission to question Collis who willingly consented.

Upon further inquiry, Collis produced a Master Charge Card for identification and an airline ticket. Noting that baggage claim checks were attached to the ticket folio, Anderson asked Collis if he had checked any luggage. Collis acknowledged that he had, but explained that he had left the terminal before retrieving his luggage to determine if his brother had arrived to meet him. Anderson asked Collis if he knew the unidentified male standing by the parked vehicle. Collis denied knowing him. Anderson requested Collis to produce additional identification but defendant asserted that his driver's license was in his checked luggage. Anderson returned the Master Charge Card and ticket envelope to the defendant and asked if defendant would agree to accompany him to the baggage claim area. Collis readily complied. At the baggage claim area, Anderson and Collis were met by Demmink. Anderson related the transpired events to Demmink including reference to the unidentified male who had also returned to the baggage claim area.

---

* The Honorable Lester L. Cecil died prior to final resolution of this matter.

1.  18 U.S.C. § 3731 provides, in pertinent part:
    An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

As Anderson, Demmink and Collis were waiting for defendant's baggage, the unidentified man approached and identified himself as a friend of Collis. He thereupon removed the shoulder bag from Collis which was retrieved by Demmink and immediately returned to defendant.

After anxiously pacing back and forth near the baggage conveyor belt, Collis bolted through the terminal doors and, with Anderson and Demmink in pursuit, ran into an adjacent parking lot. The parking lot was enclosed by a cyclone fence which blocked Collis' escape. Before Anderson and Demmink could reach him, Collis heaved the shoulder bag over the fence and onto a concrete ramp. Thereafter, Collis was placed under arrest and the bag was recovered, searched and found to contain cocaine.

On defendant's motion, the district court suppressed the evidence recovered from the shoulder bag. The lower court concluded that Anderson "seized" Collis when Anderson displayed his credentials and requested permission to question him; that this seizure was not supported by reasonable suspicion; and that the subsequent discovery of the contraband was the fruit of the unlawful seizure. The government instituted this appeal.

■ The sole issue before this Court is whether Anderson's initial encounter with Collis constituted a "seizure" within the purview of the Fourth Amendment. The Court would observe initially that the lower court properly noted that the appropriate test for determining a "seizure" was enunciated by Justice Stewart in *United States v. Mendenhall,* 446 U.S. 544, 554–55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980):

> We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the in-

cident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

(citations and footnote omitted). *See United States v. Tolbert,* 692 F.2d 1041 (6th Cir.1982); *United States v. Moore,* 675 F.2d 802 (6th Cir.1982); *United States v. Jefferson,* 650 F.2d 854 (6th Cir.1981).

The *Mendenhall* test directs a district court addressing a "seizure" issue to consider, assess and underpin its decision on objective facts.[2] The lower court, however, elected to frame its conclusions on its perception of the subjective illusory attitude of the average citizen confronted by an authority of the law:

> [T]he Court is of the opinion that from the moment Anderson identified himself with a display of credentials and began to ask questions of Defendant outside of the terminal, a *Terry* [*v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] "stop" had been effected. Defendant could have ignored Anderson, or expressed his belief that he did not have to respond to questions. As Judge Pratt noted in *[United States v.] Coleman* [450 F.Supp. 433, 439 (E.D.Mich.1978], however, "such conduct ... would have been, at the very least, a breach of etiquette, an act of discourtesy and incivility which would not be expected of the ordinary, reasonable person innocent of crime."

■ The trial court, in effect, imposed a per se rule declaring every contact between a citizen and law enforcement officer a

---

2. *United States v. Mendenhall, supra,* also involved an encounter in an airport. Subsequent to observing that the confrontation occurred in the public concourse, with the agents in civilian dress who did not display weapons and merely approached the defendant and inquired to see her ticket and identification, Justice Stewart

concluded that "nothing in the record suggests that the respondent had any *objective* reason to believe that she was not free to end the conversation in the concourse and proceed on her way." 446 U.S. at 556, 100 S.Ct. at 1878 (emphasis added).

"seizure". Such a rule is without support. As Justice Stewart noted, it is not "enough to establish a seizure that the person asking the questions [is] a law enforcement official." *United States v. Mendenhall, supra,* 446 U.S. at 555, 100 S.Ct. at 1877. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry v. Ohio,* 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, J., concurring).

The average citizen may well elect to stop and respond to inquiries of a law enforcement officer, compelled, perhaps, by a desire to assist the officer in the prevention of crime or, as noted by the lower court, bound by a sense of common courtesy. In neither instance however is the citizen actually or constructively restrained by the authority of the officer.

■ A per se rule ignores the reality that "[s]treet encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life." *Terry v. Ohio, supra,* at 13, 88 S.Ct. at 1875. Each encounter must be considered within its factual parameters as impacted by the *Mendenhall* pronouncements. It necessarily follows that generally this determination is a factual finding which will not be disturbed unless clearly erroneous. *United States v. Black,* 675 F.2d 129 (7th Cir.1982); *United States v. Patino,* 649 F.2d 724 (9th Cir.1981). The Court would hasten to add, however, that unless some objective fact discloses that a reasonable person would have felt restrained, "otherwise inoffensive contact between a member of the public and the police cannot, *as a matter of law,* amount to a seizure of that person." *United States v. Mendenhall, supra,* 446 U.S. at 555, 100 S.Ct. at 1877 (emphasis added).

■ Indeed, viewing the lower court's finding of fact without ascribing an overwhelmingly coercive effect to the mere status of the agent *qua* agent, this Court is constrained to conclude, *as a matter of law,*

that the initial encounter in this matter did not amount to a seizure. Anderson approached Collis alone and merely inquired of him if he would object to answering certain questions. The lower court found that Collis readily-consented to this request. There is no indication that Anderson employed a threatening tone of voice, displayed a weapon or in any fashion assumed an authoritarian or overbearing manner.

The circumstances of this encounter are indistinguishable from *United States v. Moore, supra.* In *Moore* the agents approached the suspect as he was entering the taxi line at the airport. The agent displayed his credentials and requested permission to pose some questions. The suspect voluntarily responded to the questions and also consented to a search of his briefcase. The inquiry and search of the briefcase developed probable cause for the agents to arrest the suspect and in "patting him down" cocaine was discovered in his coat pocket. This Court concluded that the initial "nonthreatening" approach was not a seizure and upheld the legality of the agents' conduct. *See also United States v. Tolbert, supra.*

The appellee would attempt to distinguish *Moore* by emphasizing that in the instant matter the agent touched Collis. While such a fact is pertinent, the district court specifically found that Anderson merely "touched [Collis] lightly to gain his attention."

In sum, nothing in the lower court's findings would indicate that a reasonable person under similar circumstances would not have felt free to ignore Anderson and proceed on his way. Accordingly, the lower court's suppression order must be reversed.

This Court would observe, however, that the lower court, in finding that a seizure had occurred at the initial confrontation, foreclosed consideration of the constitutional significance, if any, of the agent's subsequent conduct in requesting Collis to accompany him to the baggage conveyor. Because the district court's factual account of this aspect of the episode does not permit

this Court to presently determine whether a seizure occurred at that juncture, *compare United States v. Mendenhall, supra, and United States v. Moore, supra, with United States v. Jefferson, supra,* the matter is remanded for resolution of this issue in accordance with this Opinion. The district court may also consider, if necessary, whether Collis, in heaving his shoulder bag over the fence, effectively abandoned an interest in the carrying case.