**Richmond**

COMMONWEALTH OF VIRGINIA

v.

MAURICE CLAY SATCHELL

No. 0786-92-2

Decided September 28, 1992

COUNSEL

Thomas C. Daniel, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant.

Craig S. Cooley, for appellee.

OPINION

**COLEMAN, J.**—This is an interlocutory appeal by the Commonwealth pursuant to Code § 19.2-398 of an order suppressing the admission into evidence of drugs found on the defendant. The trial court based its ruling on a finding that the defendant, Maurice Clay Satchell, was subjected to an unconstitutional warrantless seizure by a police officer when drugs were found upon him. The Commonwealth contends that the trial judge erred because the evidence is insufficient, as a matter of law, to prove that Satchell was seized within the meaning

of the fourth amendment before the officer discovered that Satchell possessed the cocaine. We agree that Satchell had not been seized. There-fore, we reverse the trial judge's ruling to exclude the evidence, and we remand the case for trial.

In mid-afternoon on December 18, 1991, Sergeant John Buckovich, who was dressed in plain clothes and traveling in an unmarked police car, saw the defendant standing with two other individuals on a Richmond street corner known to Buckovich as an area for narcotics trafficking. Buckovich saw the defendant hand money to one man and receive something in return. The three men saw the police car as it approached and immediately started to walk away in separate directions. The defendant walked to a door stoop, but was unable to enter the locked door.

From these observations, Buckovich believed that criminal activity was transpiring. Buckovich, who had a badge around his neck, approached the defendant on the stoop and identified himself. He asked the defendant, "What's in your hand, pal?" The defendant showed his left hand, which was empty. Buckovich then asked the defendant what was in his other hand. The defendant opened his right hand, which contained two packages of cocaine. Buckovich arrested the defendant. Buckovich testified that until he observed the cocaine and made the arrest, Satchell was free to leave at any time or to ignore Buckovich's questions.

Satchell filed a pre-trial motion to suppress the evidence that he possessed cocaine on the ground that he was unlawfully seized under the fourth amendment when the contraband was taken from him. He contended that the police officer lacked probable cause to stop and search him and lacked a reasonable articulable suspicion that he might be engaged in criminal activity to justify a brief investigatory detention. The trial court granted Satchell's motion based on a finding that the defendant had been seized without the officer having a reasonable suspicion or probable cause to believe that the defendant was engaged in criminal activity when the officer approached and questioned him. Specifically, the trial judge held that "a person who finds himself in the position of Mr. Satchell being confronted by a police officer, when asked a question in the manner in which it was asked," could reasonably have believed that he was not free to leave or to disregard the police officer's questions.

 We do not reach the issue whether Sergeant Buckovich had a reasonable suspicion that criminal activity might be afoot to justify a *Terry*-type investigatory detention. Relying upon the holding in *Baldwin v. Commonwealth*, 243 Va. 191, 199-200, 413 S.E.2d 645, 649-50 (1992), we hold that Satchell was not seized when Sergeant Buckovich approached him and asked what he had in his hand. Under the fourth amendment, a person has been seized "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Florida v. Royer*, 460 U.S. 491, 502 (1983). Although the *Mendenhall* test "is necessarily imprecise" and "flexible enough to be applied to the whole range of police conduct in an equally broad range of settings, it calls for consistent application from one police encounter to the next, regardless of the particular individual's response to the action of the police." *Michigan v. Chesternut*, 486 U.S. 567, 573-74 (1988). Whether a person who encounters a police officer believes he is free to leave must be measured under all the circumstances by an "objective standard — looking to the reasonable man's interpretation of the conduct in question." *Id.* at 574. Whether a seizure has taken place involves factual determinations which bear upon whether a reasonably prudent person would feel that he or she is not free to leave, but whether the evidence is sufficient to support a finding that a seizure has occurred is ultimately a question of law. *See Mendenhall*, 446 U.S. at 554-55 (holding that the citizen/police encounter cannot, "as a matter of law, amount to a seizure of that person").

 In our review of whether the facts show that Sergeant Buckovich had seized Satchell for purposes of the fourth amendment, we will, nevertheless, accord the trial court's ruling a deferential standard of review,[1] rather than making a *de novo* determination of the

---

[1] For purposes of this decision, we adopt a deferential standard of review to decide whether the evidence was sufficient to support the trial court's finding that a reasonable person in Satchell's situation would not have felt free to leave. Other jurisdictions have held that a reviewing court conducts a *de novo* review of the evidence to determine the legal question of whether a seizure has occurred. Federal jurisdictions are divided on which standard of review is appropriate for determining whether a Fourth Amendment seizure took place. Five federal circuits adhere to the view that the question is a finding of fact subject to reversal only for clear error. *See United States v. Gordon*, 895 F.2d 932, 937 (4th Cir. 1990); *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1098 n.1 (5th Cir. 1991); *United States v. Collis*, 699 F.2d 832, 835 (6th Cir.), *cert. denied*, 462 U.S. 1119 (1983); *United States v. Dunigan*, 884 F.2d 1010, 1014 (7th Cir. 1989); *United States v. Archer*, 840 F.2d 567, 571 (8th Cir.), *cert. denied*, 488 U.S. 941 (1988). Both the Second Circuit and the D.C. Circuit state that the issue is a question of law to be determined by

ultimate legal question of whether the facts proved a seizure. As we have noted, whether Satchell personally felt he was not free to leave is not controlling. Circumstances to be considered in determining whether a reasonable person would have believed that he was not free to leave include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554. Absent evidence of this type, "otherwise inoffensive contact" between a citizen and a police officer "cannot, as a matter of law, constitute a seizure of that person." *Id.*, at 555. Thus, a law enforcement officer does not violate the fourth amendment by merely approaching an individual in a public place and asking questions of the person if the individual is willing or chooses to remain and to answer them. *Royer*, 460 U.S. at 497. There must be some coercion or show of force or authority by the officer, measured by objective standards, that would cause a person so situated reasonably to have believed that he or she was required to comply with the officer's requests.

Relying upon the *Mendenhall* and *Royer* "not free to leave" standard, the Supreme Court of Virginia has held, under circumstances much more coercive and confining than those in this case, that, as a matter of law, no fourth amendment seizure had occurred during a citizen/police encounter. *See Baldwin*, 243 Va. at 196, 199, 413 S.E.2d at 647-50. In *Baldwin*, the police officer observed the defendant and his companion at 11:30 p.m. standing at one end of a parking lot near a dumpster. When they observed the officer's vehicle, they began walking down the street toward an apartment building. The officer shined the headlights of his vehicle or his floodlight on the two individuals, told them to come over to him and to produce identification. When they complied with the officer's directive, he observed that Baldwin was intoxicated. While searching him, incident to an arrest, he discovered a small amount of drugs on Baldwin. Applying the *Mendenhall*

---

*de novo* review. *See United States v. Montilla*, 928 F.2d 583, 588 (2d Cir. 1991); *United States v. Maragh*, 894 F.2d 415, 417 (D.C. Cir.), *cert. denied*, 498 U.S. 880 (1990). The Ninth Circuit is split on the issue. *See Martinez v. Nygaard*, 831 F.2d 822, 826 (9th Cir. 1987) (*de novo* review) and *United States v. Erwin*, 803 F.2d 1505, 1508 (9th Cir. 1986) (clearly erroneous standard). The Supreme Court of Virginia was not called upon to decide the appropriate standard of appellate review in the *Baldwin* case; nevertheless, it appears to have conducted a *de novo* standard of review. Thus, since the question has not been expressly decided in Virginia, for purposes of our review, we will apply the less rigorous standard and will accord the trial court deference for its finding. Accordingly, we reverse only because we find no credible evidence, based on those circumstances which have been deemed necessary for a seizure, to support the trial court's finding that a seizure occurred.

factors, the Court in *Baldwin* found that when the officer shined the light on Baldwin and directed him to come to him, the officer had not restrained Baldwin's liberty or seized him for purposes of the fourth amendment. *Baldwin*, 243 Va. at 199, 413 S.E.2d at 649-50.

By contrast, the actions of Sergeant Buckovich in this case were significantly less coercive and confining than those of the officer in the *Baldwin* case. In this case, Sergeant Buckovich approached Satchell in midday in public and asked him what was in his hand. The officer made no show of authority other than his presence, he was not in uniform, he displayed no weapon, he was a lone officer, and, insofar as the record reflects, he made no command nor did he adopt a threatening tone. A question, as directed by Buckovich, is less coercive than a demand, as made by the officer in *Baldwin*. In *Baldwin*, the police officer's demand, coupled with the shining of a floodlight and a request for identification, was held not to constitute a seizure. The Court found that a reasonably prudent person under those circumstances would not have believed his freedom of movement was restrained. In this case, the trial court ruled that a reasonably prudent person in Satchell's position, when approached by an officer and asked what was in his hand, would have believed he was not free to leave. That ruling is inconsistent with and contrary to the *Baldwin* holding. Absent factors of coerciveness or factors that would have confined Satchell, we find no evidence to support the ruling by the trial judge. The trial judge erred by holding that Buckovich seized Satchell within the meaning of the Fourth Amendment. Accordingly, we reverse the trial court's decision granting the motion to suppress the evidence of the cocaine and remand the case to the trial court.

*Reversed and remanded.*

Fitzpatrick, J., concurred.

Benton, J., dissenting.

Because in *Baldwin v. Commonwealth*, 243 Va. 191, 413 S.E.2d 645 (1992), the Supreme Court of Virginia upheld the finding of the trial judge that the encounter in that case was not sufficiently coercive to implicate the fourth amendment, the majority concludes that *Baldwin* mandates a factual finding in this case that the encounter was not coercive even though the trial judge found as a fact that the encounter between the officer and Satchell was sufficiently coercive to cause a reasonable person to believe he could not leave. I dissent.

"[W]hen [a law enforcement] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "[If] the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed [that] he was not free to leave if he had not responded, . . . the [encounter] resulted in a detention under the Fourth Amendment." *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984). "[C]ircumstance[s] that might indicate a seizure, even where the person did not attempt to leave, would [include] . . . the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Because the trier of fact must view the "totality of the circumstances — the whole picture," *United States v. Cortez*, 449 U.S. 411, 417 (1981), each encounter must be viewed upon the circumstances then prevailing. Moreover, consistent with established principles, on appeal, we must view the evidence in the light most favorable to the party who prevailed at the suppression hearing. *Baldwin*, 243 Va. at 193, 413 S.E.2d at 646.

In this case, the evidence proved that the officer pursued Satchell from a corner to the porch area of a house. Satchell tried to enter the house but the door was locked. The officer followed Satchell onto the porch area of the house, stood "face-to-face to him" and identified himself as a police officer. The officer demanded to see what was in his hands. "[His] exact words were 'what's in your hand, pal?'" After Satchell complied and showed his left hand, the officer demanded to know, "What's in your right hand?" The trial judge asked the officer, "If [Satchell] had responded 'None of your business' what would you have done?" The officer responded, "I would have asked him why not."

Relying upon "the location of . . . Satchell at time [of] being confronted" and the "manner in which [the question] was asked," the trial judge concluded Satchell was not free to leave. Because at trial the officer testified that "if [Satchell] wanted to leave, there was no way that I could keep him," the majority overturns the trial judge's finding that the location of the encounter and the manner of questioning objectively proved that Satchell was not free to leave. Clearly, the officer's recognition of the legal impediments upon his ability to detain a citizen is not the controlling standard. Moreover, the majority inappropriately analogizes the facts of this case to those in *Baldwin*. The evidence in *Baldwin* proved that the officer saw two people in a

parking lot at night and merely "'did call towards — call for them' as they were 'walking back towards apartments.'" *Id.* at 194, 413 S.E.2d at 646. The trial judge found that this act did not amount to a coercive encounter implicating the fourth amendment.

Whether a reasonable person in Satchell's circumstances would have believed he or she was free to leave cannot be answered by a talismanic reference to *Baldwin*. We must determine whether there was a "coercive effect" in the police conduct and whether there was a condition of submission to the police. *United States v. Wilson*, 953 F.2d 116, 123 (4th Cir. 1991). The majority's determination, as a matter of law, that a reasonable person who was pursued by a police officer onto a porch, confronted "face-to-face," and ordered to open first his left hand and then his right would have felt free to leave is, in my judgment, unsustainable and certainly is not supported by *Baldwin*. The trial judge had the advantage of gauging the manner in which the officer related his commands to Satchell, and the trial judge properly gave significant weight to the officer's testimony that if Satchell had rebuffed his command to open his hands, he would have pursued the matter. The trial judge's findings are supported by the evidence on the record.

When we review the evidence in this record with a view toward determining whether the factual circumstances were resolved by the trial judge in the manner that was appropriate, we must sustain the trial judge's findings that coerciveness occurred within the confines of the porch where Satchell was confronted and that a fourth amendment violation occurred.

I dissent.