COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.    Record No. 0340-00-1          JUDGE SAM W. COLEMAN III
                                    JUNE 29, 2000
LUIS ENRIQUE MERCED


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Edward L. Hubbard, Judge

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellant.

Leon R. Sarfan (Sarfan & Nachman, L.L.C., on
brief), for appellee.


Luis Enrique Merced was charged with possession of heroin.

The trial judge granted Merced's motion to suppress the evidence,

finding that Merced was illegally seized in violation of the

Fourth Amendment.  Pursuant to Code § 19.2-398, the Commonwealth

appeals.  For the reasons that follow, we reverse the trial

court's suppression order and remand the case to the circuit court

for further proceedings.

BACKGROUND

At approximately 11:25 a.m., Newport News Police Detectives

Stevenson and Best were patrolling in an unmarked patrol car an

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

area on 23rd Street, which Best described as "one of the largest open-air drug markets in the Southeast Community." Stevenson and Best observed a "hand-to-hand transaction" between Merced and another individual. Best testified that she observed Merced give the other individual money and, in return, the individual placed a small object, which he had cupped in his hands, in Merced's hand. Stevenson only saw Merced hand the other person some money.

After observing the transaction, Stevenson, who was in plain clothes, stepped out of his vehicle, displayed his badge, identified himself, and asked to speak with Merced. Merced said, "Yes" and asked why Stevenson wanted to talk to him. Stevenson informed Merced that he had observed the "hand-to-hand drug transaction," to which Merced responded that he had only received a phone number. Stevenson then asked Merced if "he commonly [paid] for phone numbers at 23rd and Chestnut." Merced did not respond. Stevenson requested to see the phone number, but Merced stated that he had dropped it. Stevenson asked Merced if he could show him where he had dropped the phone number. As the two walked towards the area where Stevenson observed the hand-to-hand transaction, Merced stated, "I bought heroin from that guy." Stevenson asked Merced to produce the heroin, but Merced told him that he thought he dropped it. While searching for the heroin, Stevenson noticed drugs in Merced's vest pocket. Stevenson reached into Merced's pocket, retrieved the heroin, placed Merced

under arrest, and advised him of his Miranda rights.  Merced
stated that he had been a heroin addict for ten years and was glad
that he was caught.

Stevenson testified that he did not block Merced's path and
that Merced was free to leave at any time.  However, Best
testified that Merced was "detained" and not free to leave.

Relying upon our decision in McGee v. Commonwealth, 25 Va.
App. 193, 487 S.E.2d 259 (1997) (en banc), the trial court granted
Merced's motion to suppress.  The trial judge noted that when
Stevenson approached Merced and stated that he saw Merced engaged
in a drug transaction, a reasonable person would not have believed
that he was free to leave.  The trial judge stated that, "a
reasonable person, once they have been told that they have been
observed engaging in a crime, they're seized, and they pretty well
know they're seized at that point."

ANALYSIS

In reviewing a trial court's ruling on a motion to
suppress, "[w]e view the evidence in a light most favorable to
. . . the prevailing party below, and we grant all reasonable
inferences fairly deducible from that evidence."  Commonwealth
v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991)
(citation omitted).  "[W]e are bound by the trial court's
findings of historical fact unless 'plainly wrong' or without
evidence to support them."  McGee, 25 Va. App. at 198, 487

S.E.2d at 261 (citing <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996)).  "However, we consider <u>de</u> <u>novo</u> whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  <u>Hughes v. Commonwealth</u>, 31 Va. App. 447, 454, 524 S.E.2d 155, 159 (2000) (<u>en</u> <u>banc</u>) (citation omitted).

> Police-citizen confrontations generally fall into one of three categories.  First, there are consensual encounters which do not implicate the Fourth Amendment.  Next, there are brief investigatory stops, commonly referred to as "<u>Terry</u>" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot.  Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect.

<u>McGee</u>, 25 Va. App. at 198, 487 S.E.2d at 261 (citations omitted).

We find that the defendant's encounter with the police was consensual and, therefore, did not implicate the Fourth Amendment.

> A consensual encounter occurs when police officers approach persons in public places "to ask them questions," provided "a reasonable person would understand that he or she could refuse to cooperate."  Such encounters "need not be predicated on any suspicion of the person's involvement in wrongdoing," <u>and remain consensual "as long as the citizen voluntarily cooperates with the police</u>."

- 4 -

Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (emphasis added) (citations omitted).

On the other hand, a person is "seized" for Fourth Amendment purposes "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.). "In order for a seizure to occur, the police must restrain a citizen's freedom of movement by the use of physical force or show of authority." Ford v. City of Newport News, 23 Va. App. 137, 142, 474 S.E.2d 848, 850 (1996) (citation omitted). Police officers, however, are permitted to address questions to persons on the street. See Mendenhall, 446 U.S. at 552-54. "As long as the person to whom the questions are put remains free to disregard the questions and walk away," no Fourth Amendment violation has occurred. Id. at 554; see Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality opinion). "Acquiescence in 'a police request, which most citizens will do, does not negate the "consensual nature of the response."'" Greene v. Commonwealth, 17 Va. App. 606, 610, 440 S.E.2d 138, 140-41 (1994) (citations omitted). Therefore, what begins as a consensual encounter will generally continue to be consensual until the person, by word or action, withdraws his or her consent to continue the discussion, or the officer, by word or action, makes clear that the person

- 5 -

is being detained and is not free to leave regardless of the initial consent.

In determining the nature of any encounter, we consider the totality of the circumstances.  In determining whether a person is detained for Fourth Amendment purposes, we consider several factors, including "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"  Commonwealth v. Satchell, 15 Va. App. 127, 131, 422 S.E.2d 412, 414-15 (1992) (quoting Mendenhall, 446 U.S. at 554).  However, where a person voluntarily consents to cooperate with police officers in their investigation or to discuss a situation, the fact that the person has agreed to talk with the officers is a significant factor in determining whether the subsequent conduct, words, or show of force or authority from the officers will transform the consensual encounter into a detention.

The defendant, relying on McGee, argues that he was unlawfully seized at the moment Stevenson informed him that he observed Merced in a "hand-to-hand drug transaction."  On these facts, Merced's reliance on McGee is misplaced.

In McGee, police officers received a tip from an anonymous informant that a "black male wearing a white t-shirt, black

shorts, and white tennis shoes" was selling drugs on a particular street corner. Three uniformed and armed police officers were dispatched to the area in two marked police cruisers. One of the officers approached McGee and "stated to him that I had received a call that [he] was on this corner selling drugs and [that he] matched the description" of the individual who had been reported as selling drugs. The officer then requested permission from McGee to "pat [him] down." McGee stood and extended his arms in front of him with both fists clenched. Believing that McGee might be concealing a weapon in his closed fists, the officer asked him to open his hands. McGee was holding money, a torn ziplock bag, and a "little piece of white substance." The officers arrested McGee and, in a search conducted incident to the arrest, the officer found twenty-five bags containing crack cocaine in McGee's trousers.

We held that McGee was illegally seized when the three officers approached him on the porch and told him that they had a report that he was "on the corner selling drugs and [that he] matched the description." We found that the encounter was not consensual. We stated that "[w]hen the police expressly inform an individual that they have received information that the individual is engaging in criminal activity, the police 'convey a message that compliance with their requests is required,' Florida v. Bostick, 501 U.S. 429, 435 (1991), and 'that failure

to cooperate would lead only to formal detention.'"  McGee, 25 Va. App. at 200, 487 S.E.2d at 262.  We held that "when a police officer confronts a person and informs the individual that he or she has been specifically identified as a suspect in a particular crime which the officer is investigating, that fact is significant among the 'totality of the circumstances' to determine whether a reasonable person would feel free to leave." Id.  McGee, unlike the situation in the present case, did not consent or agree to talk with the police officers.  From the outset, McGee was detained when he was informed that he had been reported as having committed a crime of selling drugs.

McGee is distinguishable from and does not control the case before us.  Here, the encounter was consensual.  It began as consensual and continued to be such.  After Merced agreed to talk with Stevenson, Stevenson asked Merced about the drug transaction that the officers had observed.  That inquiry was the purpose for which they had sought and obtained Merced's consent.  The officers were in plain clothes, and they had displayed their badges to identify themselves as police officers.  The officers did not touch Merced, display their weapons, block his path, or use threatening or intimidating language or tone of voice.  Cf. Langston v. Commonwealth, 28 Va. App. 276, 282-83, 504 S.E.2d 380, 382-83 (1998) (holding that encounter not consensual where three uniformed police officers

on bicycle patrol pursued defendant, who was on foot, asking repetitive and redundant questions until he stopped to talk with them, at which time he was surrounded by the officers). Had Merced not voluntarily agreed to talk with Stevenson and Best or had Stevenson first confronted Merced with the accusation that he had observed the "hand-to-hand drug transaction," the situation may well have been controlled by our holding in McGee. However, the encounter began as consensual and remained consensual. Merced did not by words or actions withdraw his consent, and the officers did nothing to indicate that he was compelled or required to continue to talk with them. During the conversation to which he had consented, he voluntarily offered an explanation for the "hand-to-hand drug transaction" that Stevenson observed. Merced did not refuse to answer any questions or attempt to leave. See generally Richmond v. Commonwealth, 22 Va. App. 257, 261, 468 S.E.2d 708, 709-10 (1996) (holding that consensual encounter between police officer and defendant, who was lawfully parked in a parking lot, became a seizure when officer retained defendant's driver's license after running a check); Payne, 14 Va. App. at 88, 414 S.E.2d at 870 (holding that consensual encounter became a seizure when defendant refused officer's request to open his fist and officer grabbed defendant's hand, forcing it open). Stevenson continued to ask questions of an investigatory nature, to which Merced

voluntarily responded.  See Royer, 460 U.S. at 497 (stating that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street . . . by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen").  Moreover, the encounter continued to be consensual and cooperative even while Merced accompanied Stevenson back to the area where the transaction occurred.  See generally Grinton v. Commonwealth, 14 Va. App. 846, 849-50, 419 S.E.2d 860, 862 (1992) (holding that encounter consensual where defendants remained at a toll booth to answer questions and subsequently moved their vehicle off the road pursuant to officer's request in order to search the vehicle).

We hold that where a citizen consents or agrees to talk with a police officer and does not withdraw his or her consent, either expressly or implicitly, the encounter remains consensual until the officer, by physical force or show of authority, restrains the citizen's freedom of movement and the reasonable person would not feel free to leave.

Accordingly, we hold that the encounter was consensual and did not implicate the Fourth Amendment.  We, therefore, reverse the trial court's ruling and remand for further proceedings.

Reversed and remanded.