COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


TIMOTHY OBERRY STITH

MEMORANDUM OPINION[*] BY

v.      Record No. 2394-03-2      JUDGE D. ARTHUR KELSEY
                                  JANUARY 11, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
James F. D'Alton, Jr., Judge

Daniel W. Hall, Senior Assistant Public Defender, for appellant.

Susan L. Parrish, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Convicted of possession of cocaine with intent to distribute, Timothy Oberry Stith asserts

on appeal that the trial court erred by not suppressing evidence recovered from him during a

search incident to his arrest and statements he made both before and after his arrest. We affirm,

finding no constitutional violations by the arresting officers and thus no reason to suppress

evidence under the exclusionary rule.

I.

On appeal from a denial of a suppression motion, we examine the evidence in the light

most favorable to the Commonwealth, giving it the benefit of all reasonable inferences. Medley

v. Commonwealth, 44 Va. App. 19, 24, 602 S.E.2d 411, 413 (2004) (*en banc*); Slayton v.

Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003).

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

During the early morning hours of March 8, 2003, several officers of the Petersburg Police Department, including Officer Lawrence Wiencek, were on street patrol. The uniformed officers saw Stith and another individual standing outside a Food Mart. As the officers approached the two men, one officer recognized Stith and called him out by name. "How you doing, Mr. Stith?" Stith responded, "Okay." Officer Wiencek then asked Stith, "Can I talk to you?" Stith said yes.

Several officers stood in front of Stith and his companion, "close enough to speak" to them.[1] Officer Wiencek asked Stith for his name. Stith replied, "Timothy Stith." Wiencek then asked Stith if he had any outstanding warrants on file, to which Stith responded, "I don't know." Using his handheld radio, Officer Wiencek called police headquarters "to see if he had a warrant." At this point, Officer Wiencek testified, Stith "was free to leave . . . he wasn't under any detention." Nothing was said to suggest he could not simply walk away. Given Stith's agreement to talk with him, however, Officer Wiencek assumed Stith "was going to wait" during the warrant inquiry. Stith did wait.

The dispatcher advised Wiencek that an outstanding warrant for Stith's arrest was on file. The officer then advised Stith that there was "an outstanding warrant for his arrest and that he was under arrest." Officer Wiencek verified Stith's date of birth to ensure it matched the information on the warrant. Officer Wiencek then searched Stith and found 58 baggies of crack cocaine.

During the conversation preceding Stith's arrest, the officers stood in a semicircle facing Stith and his companion. "The two other officers that were there," Officer Wiencek recalled, "talked to the other guy" accompanying Stith. They also spoke to Stith as well. Had Stith

---

[1] The record is unclear exactly how many officers were involved. On direct, Officer Wiencek said there were two other officers accompanying him. On cross, he said three other officers were present. Given the circumstances of this case, the distinction is immaterial.

chosen to discontinue the dialogue, Officer Wiencek testified, he could have "walked around" the officers. No evidence suggested Stith's only path of departure (or, for that matter, even his natural path of departure) was somehow blocked by the officers. Nor did any facts imply that the officers backed Stith up against a wall or into a corner. At no point prior to Stith's arrest did any officer unholster a firearm, give any commands, make any threats, or physically touch Stith.

At trial, Stith moved to suppress all statements made by him and evidence found on him. The ostensible conversation, Stith argued, was not a conversation at all. It was a custodial interrogation pursuant to an illegal *de facto* arrest. The trial court denied the suppression motion, heard the evidence, and found Stith guilty of possession of cocaine with intent to distribute in violation of Code § 18.2-248. Stith appeals the denial of his suppression motion, which, if successful, would eliminate any evidentiary basis for his conviction.

II.

Though the ultimate question whether the officers violated the Fourth or Fifth Amendments triggers *de novo* scrutiny, "we defer to the trial court's findings of 'historical fact' and give 'due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Slayton, 41 Va. App. at 105, 582 S.E.2d at 449-50 (citations omitted). To prevail on appeal, "the defendant must show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the prosecution, was reversible error." Id. at 105, 582 S.E.2d at 450 (quoting Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003)); see also Barkley v. Commonwealth, 39 Va. App. 682, 690, 576 S.E.2d 234, 238 (2003).

A. CONSENSUAL CONVERSATION

Stith first argues that the officers violated the Fourth Amendment by seizing him without an individualized suspicion of criminality, either in the form of probable cause justifying a

custodial arrest, Maryland v. Pringle, 540 U.S. 366 (2003), or, short of that, a reasonable, articulable suspicion that criminal activity "may be afoot" justifying an investigatory detention, United States v. Arvizu, 534 U.S. 266, 273 (2002). We agree with Stith that neither predicate for a seizure has been shown, but disagree with him that either had to be.

A consensual encounter "does not require any justification and may be terminated at will by the individual." White v. Commonwealth, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004). Thus, officers need not have any particularized suspicion to approach "individuals on the street or in other public places" and then put "questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002); see also Barkley, 39 Va. App. at 691-93, 576 S.E.2d at 238-39. So long as officers refrain from inducing "cooperation by coercive means," they need no suspicion of criminality to "pose questions, ask for identification, and request consent to search luggage." Drayton, 536 U.S. at 201 (citing Florida v. Bostick, 501 U.S. 429, 434-35 (1991)).[2]

An officer questioning a citizen exceeds the scope of his authority and effects a seizure only when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." California v. Hodari D., 499 U.S. 621, 628 (1991) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). This reasonable-person test "presupposes an *innocent* person." Bostick, 501 U.S. at 438 (emphasis in original). Framed this way, the test guarantees that Fourth Amendment protections do not "vary with the state of mind of the particular individual being approached." Wechsler v. Commonwealth, 20 Va. App. 162, 170, 455 S.E.2d 744, 747 (1995) (citations omitted).

---

[2] See also Barkley, 39 Va. App. at 691, 576 S.E.2d at 238; McLellan v. Commonwealth, 37 Va. App. 144, 151, 554 S.E.2d 699, 702 (2001); Commonwealth v. Satchell, 15 Va. App. 127, 131, 422 S.E.2d 412, 415 (1992).

Several factors determine whether an officer "by means of physical force or show of authority" would cause a reasonable person to feel seized. Mendenhall, 446 U.S. at 554-55; see also Sykes v. Commonwealth, 37 Va. App. 262, 268, 556 S.E.2d 794, 797 (2001). "The threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled," Londono v. Commonwealth, 40 Va. App. 377, 398-99, 579 S.E.2d 641, 651 (2003) (citation omitted), all shed light on whether a seizure has occurred. See also Barkley, 39 Va. App. at 692, 576 S.E.2d at 239.

No one circumstance, however, should be considered apart from the larger context. Thus, an encounter — otherwise consensual — does not become a seizure merely because of the presence of several armed officers, Drayton, 536 U.S. at 204-05, or the failure of the officers to inform the person that he is free to ignore further questioning, I.N.S. v. Delgado, 466 U.S. 210, 216 (1984), or their failure to tell the individual he is free to leave, Ohio v. Robinette, 519 U.S. 33, 39-40 (1996). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." Delgado, 466 U.S. at 216.

In this case, the trial court found the conversation consensual up until the moment of Stith's arrest on the outstanding warrant. The evidence supports that decision. Officer Wiencek began the conversation with an express request for permission to speak with Stith. He agreed. This initial exchange *expressly* established the conversation as consensual. See Lawrence v. Commonwealth, 17 Va. App. 140, 144, 435 S.E.2d 591, 593 (1993) ("He agreed to talk with them."), aff'd *per curiam*, 247 Va. 339, 443 S.E.2d 160 (1994). At no point from the beginning of the encounter to its end did Officer Wiencek make any threats, raise his voice, or issue any

commands to Stith. Nor did any of the officers draw their weapons[3] or physically touch Stith. What was said in Drayton can be said here as well: "There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice. It is beyond question that had this encounter occurred on the street, it would be constitutional." Drayton, 536 U.S. at 204 (finding no seizure during questioning within the close confines of a bus).

Stith's primary complaint focuses on the fact that the officers stood near him in a semicircle. To leave their presence, Stith points out, he would have had to "walk around" them. Like the trial court, we find this circumstance insufficient to carry the weight of Stith's argument. Blocking one's only path of escape, making a doorway impassable, backing one into a corner, completely encircling a suspect — arguably all involve circumstances suggestive of a *de facto* seizure. But cf. Drayton, 536 U.S. at 205 (holding no seizure existed as officer stood at the "front of the bus" by the exit door); Delgado, 466 U.S. at 219 (officers stationed at exits of factory did not make their questioning of workers nonconsensual).

But that is not what happened to Stith. He was not surrounded, backed up against a wall, or cornered. To be sure, no evidence suggests that the path *around* the officers was any less natural and ordinary than the path *through* them. While several officers stood near Stith and his companion, had Stith decided to end the encounter with the officers and leave, he needed only to walk around them. See United States v. Kim, 25 F.3d 1426, 1431 n.2 (9th Cir. 1994) (even if egress "partially blocked" a seizure does not necessarily take place "if an avenue for departure remains open"); United States v. $25,000 U.S. Currency, 853 F.2d 1501, 1505 (9th Cir. 1988)

---

[3] "That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon." Drayton, 536 U.S. at 205; Barkley, 39 Va. App. at 694, 576 S.E.2d at 240.

(finding no seizure where individual was "surrounded by the officers and blocked by a concrete pillar" but nevertheless "could have easily walked around the pillar and the officers").  If that fact makes the conversation a seizure, it would mean a group of officers on street patrol could never — as a group — have a face-to-face conversation with anyone without being accused of conducting a *de facto* arrest.  They would either have to shout from a distance or form some ostensibly less threatening geometric shape (other than a semicircle) while carrying on the conversation.

Even so, Stith continues, what may have started off as a consensual encounter quickly became a seizure as soon as Officer Wiencek asked him if he had any "outstanding warrants." Under this reasoning, a consensual conversation cannot remain consensual if the police officer asks any potentially incriminating questions.  We cannot accept this thesis.   As many courts have explained, "the mere fact that officers ask incriminating questions is not relevant to the totality-of-the-circumstances inquiry — what matters instead is 'the manner' in which such questions were posed." United States v. Ringold, 335 F.3d 1168, 1173 (10th Cir.) (citations omitted), cert. denied, 540 U.S. 1026 (2003).[4]  Even "persistent questioning regarding criminal activity" does not necessarily negate the consensual nature of the conversation.  Dickerson v. Commonwealth, 266 Va. 14, 17, 581 S.E.2d 195, 197 (2003) (holding that an officer did not seize an individual simply by asking whether he "smoked marijuana" or had any illegal drugs).[5]

---

[4] See, e.g., Bostick, 501 U.S. at 439 (noting that the proposition that "police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions" is supported by a "long, unbroken line of decisions dating back more than 20 years"); United States v. Kim, 27 F.3d 947, 953 (3d Cir. 1994) (holding "potentially incriminating questions" do not by themselves make an encounter coercive).

[5] Nor can a seizure be implied merely from an officer's request for identification. See, e.g., McCain v. Commonwealth, 261 Va. 483, 491, 545 S.E.2d 541, 546 (2001) (holding "a police request made in a public place for a person to produce some identification, by itself, generally does not constitute a Fourth Amendment seizure" (citations omitted)); McLellan,

In this case, the officers began the conversation by asking Stith for permission to question him. That one of those questions ("Do you have any outstanding warrants?") might solicit an incriminating answer did not convert the conversation into a seizure. The officers did not directly accuse Stith of anything, or make a display of force, or use any intimidating nonverbal cues to coerce a response. The encounter remained consensual until the moment that Officer Wiencek arrested Stith on the outstanding warrant. The trial court, therefore, did not err in denying Stith's motion to suppress on this basis.

## B.   MIRANDA VIOLATION

Stith's second argument asserts that his "Fifth Amendment rights were violated when he was asked to give his identity, and then give further details after being told he was under arrest without being advised of his Miranda rights." The trial court correctly rejected this argument. Stith's statements during the consensual encounter do not implicate Miranda, which applies only to custodial interrogations in the context of a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Yarborough v. Alvarado, 124 S. Ct. 2140, 2149 (2004) (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)).

As to the "further details" Stith claims to have given after his arrest on the outstanding warrant, Officer Wiencek asked Stith only for his date of birth to confirm his identity. Miranda does not apply to "routine booking" questions seeking biographical information. Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990). Such questions "normally attendant to arrest and custody" do not constitute custodial interrogation under Miranda. Watts v. Commonwealth, 38 Va. App. 206, 215, 562 S.E.2d 699, 704 (2002) (quoting Wright v. Commonwealth, 2 Va. App. 743, 746, 348 S.E.2d 9, 12 (1986), and South Dakota v. Neville, 459 U.S. 553, 564 n.15 (1982)).

___

37 Va. App. at 153, 554 S.E.2d at 703 (finding it inconsequential, by itself, that the "detective, in a public place, simply requested some identification").

- 8 -

## III.

The circumstances of this case lack the indicia of coercion necessary to convert the officers' consensual conversation with Stith into a *de facto* seizure.  His statements, therefore, were not the product of an illegal detention.  Nor were they in any way obtained in violation of <u>Miranda</u>.  The physical evidence taken from Stith, moreover, was properly obtained through the search incident to his arrest.  We thus affirm the trial court's denial of Stith's motion to suppress.

<u>Affirmed.</u>

Benton, J., dissenting.

The Fourth Amendment protects "the right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "The Supreme Court has provided examples of circumstances indicating the occurrence of a seizure . . . includ[ing] 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" Bolden v. Commonwealth, 263 Va. 465, 471, 561 S.E.2d 701, 704 (2002) (quoting United States v. Mendenhall, 446 U.S. 544, 553 (1980)). Also relevant is whether the officer advises the person "that he or she was free to leave." Harris v. Commonwealth, 266 Va. 28, 32, 581 S.E.2d 206, 209 (2003). In determining whether a seizure has occurred, all of these circumstances need not coincide. See Bolden, 263 Va. at 472, 561 S.E.2d at 705. Rather, when the circumstances establish that an officer, "by means of . . . show of authority, has in some way restrained the liberty of a citizen . . . we [may] conclude that a 'seizure' has occurred." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968).

Officer Wiencek testified that he and three other officers -- Officer Jones, Officer Land, and another officer whose name he "wasn't familiar with" -- were in uniform and armed when they arrived in two police vehicles and "pulled up in the parking lot to [Stith]." The officers were tasked to "interdict" people on the street and contact them "purposefully." The four officers approached Stith and another man, who were at a telephone. One officer asked, "how you doing Mr. Stith," and all the officers stood in a semicircle in front of Stith "about three . . . to four feet away from him." All four of the officers were "talking to [Stith]" seeking to determine whether he knew of warrants for his arrest.

I would hold that the threatening presence of the four armed officers arrayed in a semicircle in front of Stith, the questioning of Stith about criminal conduct by all the officers,

and the absence of a statement to Stith that he was free to leave, when combined, "present such a 'show of authority,' as to make a reasonable person believe he . . . is not free to leave the encounter." Bolden, 263 Va. at 472, 561 S.E.2d at 705.

"[T]he Fifth Amendment privilege is available . . . and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." Miranda v. Arizona, 384 U.S. 436, 467 (1966). Although "the police have the right to request citizens to answer voluntarily questions concerning unsolved crimes," the police "have no right to compel them to answer." Davis v. Mississippi, 394 U.S. 721, 727 n.6 (1969). Thus, when police officers detain a person in violation of Terry, the fruits of that encounter must be suppressed. Sibron v. New York, 392 U.S. 40, 65-66 (1968); Terry, 392 U.S. at 13.

I would hold that the officers detained Stith without reasonable suspicion of criminal conduct and that the trial judge erred in refusing to suppress the evidence. I, therefore, dissent.